CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAY 04 2023

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 4:19-cr-029 |
| v. | ) | |
| | ) | |
| MAURICE VERSHAWN HOWARD, | ) | By:    Michael F. Urbanski |
| Defendant. | ) | Chief United States District Judge |
| | ) | |

## MEMORANDUM OPINION

This matter is before the court on the issue of restitution. Pursuant to a written plea agreement, defendant Maurice Howard pleaded guilty on February 3, 2023, to one count of conspiracy to tamper with consumer products in violation of 18 U.S.C. § 1365(e) and one count of extortion in violation of 18 U.S.C. § 875(d). At sentencing, the court determined that a further hearing was needed on the amount of restitution. This hearing was held on March 31, 2023. Following the hearing, both the government and Howard provided supplemental information to the court.

### I.

In February 2019, Howard was employed by Packers Sanitation Services, Inc. Ltd. ("PSSI") on an overnight cleaning crew in the Monogram Food Solutions, LLC ("Monogram") manufacturing plant. Statement of Facts, ECF No. 184, at 1. On February 21, 2019, another employee used Howard's iPhone to film two videos: one of Howard urinating into the finished meat product section of the facility and another of male genitalia urinating onto finished meat product that was drying pending packaging. Id. In March 2019, when PSSI and Monogram became aware of the videos, Howard repeatedly refused to turn over the

footage without payment. Id. at 1–2.  Because of Howard's conduct, Monogram and the Department of Agriculture recalled over 400,000 pounds of meat. Id. at 2.

The government seeks restitution on behalf of Monogram and PSSI, as both incurred expenses after learning of Howard's videos. At the sentencing hearing, the government relied upon unsigned letters from Monogram and PSSI representatives, along with summary spreadsheets supporting the figures from each entity. In the presentence report ("PSR"), the value of the product lost due to the recall was stated as $2,838,721.61. ECF No. 306, at 6. Because Monogram received $700,000 in settlement from PSSI, the PSR states that Monogram's total loss is $2,138,723.61. Id. Per the PSR, PSSI's losses were $929,189, stemming from the $700,000 settlement paid to Monogram for the meat contamination done by its employee and $229,189 in additional legal fees. Id. at 5.

At the March 31, 2023, hearing, the government presented testimony from April Humbles, the lead United States Department of Agriculture ("USDA") case agent responsible for the recall in this case. Humbles testified that the 400,000 pounds of meat product were recalled because there was a reasonable likelihood a health hazard could occur. While Monogram participated in the recall voluntarily, the USDA would have seized the product if Monogram had declined to comply. Humbles testified that there was no circumstance in which the affected meat would have been permitted to remain on the market and that the meat recalled was subsequently destroyed. Humbles further stated that the recall applied to product manufactured from the date Howard's employment began through the date Monogram became aware of the videos, as the video's recording date was not immediately apparent. During cross-examination, Humbles indicated that not all of the affected meat product was

successfully recalled; approximately 180,000 of the 400,000 pounds recalled were sold by retail establishments.

After the hearing, the court requested that both Monogram and PSSI provide sworn declarations or affidavits attesting to their losses. ECF No. 302. The court further asked that Monogram's attestation take into account the value of the recalled product that was sold. Id. The government provided two declarations from Monogram and one declaration from PSSI responding to the court's requests. All are appended to the PSR. ECF No. 306. In the supplemental declaration, Monogram explains that they still suffered losses even though some of the recalled product was sold, as "Monogram had to reimburse ConAgra even for recalled meat that had been previously sold to individual consumers." ECF No. 306, at 34. Indeed, in its supplemental declaration, Monogram indicated that its actual losses from the contaminated meat recall exceeded $6 million. Nevertheless, although Monogram averred that the $2.8 million figure understated its losses from the meat product recall by a substantial amount, the government advised in an email that Monogram stood by the amount requested in the PSR, as follows: "the restitution request for Monogram remains the figure listed in the PSR, which is below the attested to full loss amount." Taking into account all of this information, including the evidence at the hearing and the supplemental declarations, the court finds by preponderance of the evidence that the amount of the loss sustained by Monogram is at least $2,838,731.61. As the government limits the restitution request to that amount, $2,838,731.61 will be the total amount of restitution ordered.

## II.

Under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, restitution is mandatory for certain crimes, including "an offense described in section 1365 (relating to tampering with consumer products)." 18 U.S.C. § 3663A(c)(1)(A)(iv). A district court must order restitution where "an identifiable victim or victims has suffered a . . . pecuniary loss." Id. § 3663A(c)(1)(B). Under the MVRA, a "victim" is "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." Id. § 3663A(a)(2). If "agreed to by the parties in a plea agreement," the court may also order "restitution to persons other than the victim of the offense. Id. § 3663A(a)(3).

The court is required to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1). Where the offense results in damage to, or loss or destruction of, property, and return of the property is impossible or inadequate, the victim's loss is the greater of the value of the property on the date it was damaged, lost, or destroyed, or the value of the property at sentencing, less the value of any part of the property that is returned. 18 U.S.C. § 3663A(b)(1). Further, "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." Id. § 3664(f)(1). The government bears the burden of establishing the proper amount or type of restitution by the preponderance of the evidence. Id. § 3664(e).

After determining the amount of restitution owed to each victim, the court is required to specify a restitution schedule that accounts for the defendant's financial resources and assets, projected earnings and other income, as well as any financial obligations. Id. §

4

3664(f)(2). Nominal, periodic payments may be ordered where the defendant's economic circumstances "do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments. Id. § 3664(f)(3)(B).

### III.

Pursuant to the MVRA, restitution is mandatory in this matter, as Howard has been convicted of tampering with a consumer product. 18 U.S.C. § 3663A. For the reasons below, the court concludes that Monogram is entitled to restitution in the amount of $2,838,721.61 and that PSSI is ineligible for restitution.

### A. Monogram

Monogram is a victim of Howard's criminal offense, as 400,000 pounds of their meat product were subject to recall and, at least in part, destroyed as a direct and proximate result of Howard's tampering with consumer products. 18 U.S.C. § 3663A(a)(2). Therefore, the court is required to order as restitution the value of these 400,000 pounds of meat product, without considering compensation from other sources, such as insurance or the settlement from PSSI. Id. at §§ 3663A(b)(1), 3664(f)(1). Based on the testimony at the March 31, 2023, hearing, and the sworn declarations submitted by Monogram's representative, the court finds, by a preponderance of the evidence, that the value of the meat products damaged and destroyed exceeds the $2,838,723.61 requested and orders restitution in that amount.

### B. PSSI

PSSI requests restitution for the $929,189.00 it spent in "legal fees and settlements." PSR, ECF No. 306, at 38–39. While these expenses are real and significant, they are not

5

compensable under the MVRA. This statute requires restitution for certain offenses resulting in "damage to or loss or destruction of property of a victim of the offense." 18 U.S.C. § 3663A(b)(1) (emphasis added). The meat product with which Howard tampered was the property of Monogram, not PSSI. PSSI is therefore not a victim within the meaning of the MVRA.

Further, as described above, the MVRA requires the court to order restitution in the "full amount" of Monogram's losses, without regard to any other compensation Monogram received. 18 U.S.C. § 3664(f). This provision prohibits the court from ordering part of the restitution to which Monogram is entitled to PSSI as reimbursement for the $700,000 settlement.

Finally, even if PSSI were a victim within the meaning of the MVRA, the "more than $100,000" PSSI spent "on investigatory experts, former law enforcement forensics experts, and external lawyers to investigate, identify, and mitigate the affected food product, and protect the public" would not be recoverable. PSR, ECF No. 306, at 38–39. The MVRA does not authorize restitution for these types of consequential damages, only restitution for the value of the property damaged or destroyed. Restitution is limited to "that which the statute authorizes: return of the property or payment of the property's value . . . less any value of any part of the property that is returned." United States v. Mullins, 971 F.2d 1138, 1147 (4th Cir. 1992) (interpreting the near-identical restitution calculation provision under the Victim and Witness Protection Act, 18 U.S.C. § 3663); see also United States v. Abdelbary, 746 F.3d 570, 578 (4th Cir. 2014) (noting that restitution is inappropriate "based simply on the fact that the fees were incurred to prevent harm from, or to remedy harm caused by, the defendant's

criminal conduct"). Therefore, restitution is unavailable for PSSI's "consequential damages such as attorney's and investigators' fees." Mullins, 971 F.2d at 1147.

Other avenues for awarding restitution to PSSI under the MVRA also fail. Based on the record before the court, these expenses cannot be considered "expenses incurred during participation in the investigation or prosecution of the offense" pursuant to 18 U.S.C. § 3663A(b)(4), as this provision excludes expenses from private investigations and civil proceedings. Lagos v. United States, 138 S.Ct. 1684, 1687–89 (2018). Further, as restitution to PSSI was not agreed to in the plea agreement, the court cannot award restitution for these expenses under 18 U.S.C. § 3663A(a)(3). Therefore, PSSI is ineligible for restitution in this case.

## C.

The court finds from the facts of record that Howard's "economic circumstances . . . do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." 18 U.S.C. § 3664(f)(1)(B). Pursuant to his affidavit, Howard currently earns $2,400 per month and has outgoing essential expenses for housing, groceries, utilities, and his vehicle of $2,200 per month. ECF No. 305. Under these circumstances, nominal periodic payments by Howard are appropriate.

## IV.

For the aforementioned reasons, the court **ORDERS** restitution to Monogram in the amount of $2,838,723.61.


Entered: May 3, 2023

Michael F. Urbanski
Chief U.S. District Judge
2023.05.03 22:33:44
-04'00'

Michael F. Urbanski
Chief United States District Judge

8